EVERETT MESSENGER AND OTHERS *against* THE FOURTH NATIONAL BANK OF THE CITY OF NEW YORK.

(Decided December 6th, 1875.)

It is a well settled rule that the affidavits of jurors will not be received to impeach their verdict, and therefore the court refused to set aside a verdict on the ground as stated in an affidavit made by one of the jurors, that on account of his deafness he was unable to hear the testimony of any of the witnesses who testified in the cause, nor the charge of the judge to the jury.

Where a party is surprised by the evidence given on the trial by his adversary's witnesses, and is not prepared with the evidence to rebut it, his proper course is to apply for an adjournment in order to procure it, or for leave to withdraw a juror, and if he neglects to do so, and allows the case to go to the jury on the evidence taken, the court will not grant him a new trial on the ground that the evidence was a surprise to him, and that the witnesses whose testimony was needed to rebut it, were kept away from the trial by the contrivance of persons acting in the interest of his adversary.

Where A. indorsed B.'s name on a check drawn to his (B.'s) order, and B., although notified of this, made no objection, nor ever in any way repudiated A.'s assumed authority to sign his name: *Held*, in an action by the drawers of the check against the bank on which it was drawn, for the moneys paid by them on such indorsement, that these facts were sufficient to show a ratification by B. of A.'s assumed authority.

APPEAL by plaintiffs from an order of this court made at special term by Chief Justice CHARLES P. DALY, denying a

motion to set aside a verdict, and direct a new trial, in an action tried before him with a jury.

The action was brought by the plaintiffs against the defendant, to recover an alleged balance of deposit amounting to $14,830, due to the plaintiffs on their account with the defendant.

The defendant by its answer admitted that the plaintiffs had had that sum on deposit with it, but alleged that they had made and delivered their check for the whole, which check was made payable to one W. R. Arthur, and that the said check indorsed in the name of W. R. Arthur and Aaron Rutherford, had been duly presented to the defendant by the Bulls Head Bank of the City of New York, which at the time of its presentation held the said check, and the defendant had paid it, and had no funds to the credit of the plaintiff in its hands.

On the trial (which was the second trial of the action), the facts appeared as stated in the opinion of the court printed below, the only question of facts litigated being whether the indorsement of Arthur on the check, and which had been made by one Freese, had been made by Arthur's authority. A verdict was rendered for the defendant.

A motion was afterwards made for a new trial founded (1) on the affidavit of one Scovill D. Foot, who had been foreman of the jury before whom the case was tried, and who in his affidavit swore " that he, deponent, could not and did not hear the testimony of any of the witnesses who testified in said cause, nor the charge of the justice to the jurors, before they retired to deliberate for their verdict, intelligibly, so owing to a great degree of deafness ; and deponent further says, that he was asked by other jurors as to the testimony given at said trial, and that they did not understand it or the charge of his honor in reference thereto. And deponent further says, that he could not hear plaintiffs' counsel, who conducted the case on the part of said plaintiffs, in anything definitely that he said. And says he has, owing to the great degree of deafness under which he labors, asked to be wholly excused from jury duty, as it is utterly impossible for him to hear intelligently, either the witnesses, counsel, or the rulings and charge of the presiding judge at the trial of any cause."

The motion was also made on affidavits tending to show that the plaintiffs had been surprised by the testimony of one Rutherford (a witness for the defendant), who had not been called on the former trial of the action, and that one Dana, who had been defendant's witness on the former trial, and whose testimony on that trial was inconsistent with what was sworn to by Rutherford, had been prevented by the defendant from appearing as a witness. On denying the motion for a new trial, the following opinion was delivered by Chief Justice CHARLES P. DALY:

"The application for a new trial must be denied.

"It is a general rule, which has been long and well settled, that the affidavits of jurors will not be received to impeach their verdict (*Vaise* v. *Delaran*, 1 Term R. 11; *Owens* v. *Washburton*, 1 Bos. & P. N. C. 226; *Smith* v. *Cheetham*, 3 Car. 57; *Welling* v. *Swasey*, 3 Gil & Johns. 473; *Dana* v. *Tucker*, 4 Johns. 487; *People* v. *Columbia Co. Com. Pleas*, 1 Wend. 297; *Robbins* v. *Wendover*, 2 Tyler, 11). 'The affidavit of a juror to impeach his verdict,' says the court, in *Welling* v. *Swasey*, *supra*, 'ought to be rejected, because its admission would open a door to tamper with jurymen after they had given their verdict; it ought to be rejected, because it might be the means, in the hands of a dissatisfied juror, to destroy a verdict at any time, after he had assented to it; in fine, it ought to be rejected, because it would unsettle all the verdicts in the country.'

"This case is no exception to this well-settled rule. If the juror was laboring under the infirmity of deafness, he would have been excused upon applying to the court, when he was called to be impaneled, or if, after sitting in the case, he found that he was unable from his deafness to hear the testimony, he should have made known the fact, and the parties would no doubt have consented that he might withdraw, and that the case should go on before the rest. It would not be to the interest of either party, that their rights should be disposed of by a juror who could not hear the testimony. It not unfrequently occurs that a juror states that he is unable from his deafness to hear the evidence, and that he withdraws, with the

consent of all parties. I never knew a case where it was refused. But to allow him, when, without making any complaint, he has sat through the whole cause, and given his assent to the verdict, to impeach it by an affidavit to the effect that he did not hear the testimony or the charge of the judge, might lead to the very abuses pointed out in *Welling* v. *Swasey* (*supra*), and which it was the object of this rule to prevent.

" The other ground upon which a new trial is asked for, is that the plaintiffs were taken by surprise, by the testimony given by Rutherford, which they regard as inconsistent with the account of the transaction that had been given by Dana on the former trial; that they were taken by surprise, not only by the unexpected testimony of Rutherford, but by the fact that Dana had been in the court, attending as a witness, but was absent when Rutherford gave his testimony, and could not afterwards be found to be examined by the plaintiffs, having kept out of the way at the instance and request of Rutherford.

Rutherford's account of what took place in his presence may very well have surprised the plaintiffs, as Rutherford was not called on the former trial, nor was the fact of his presence at the time testified to by Dana.

" It may also be conceded, that if the jury had had before them what was sworn to by Dana on the former trial, or if the plaintiffs had been enabled to examine him upon the trial, that it may have had a material effect upon the verdict; for the whole case turned upon that point, whether Arthur had authorized Freese to indorse Arthur's name upon the check. I am also satisfied, from the evidence before me, that Dana was kept out of the way through the instrumentality of Rutherford. But it does not follow from all this that the court will grant a new trial.

" The rule originally was, that if one of the plaintiffs was taken by surprise, his only remedy was to submit to a nonsuit (*Harrison* v. *Harrison*, 9 Price, 89). 'I have no doubt,' said Baron Wood, in the case cited, ' that the plaintiff was taken by surprise ; but,' he adds, ' he should have requested to be non-suited, that he might have come better prepared in another action, but he chose, notwithstanding, to go on, and *take the chance*

*of a verdict*, by letting the case go to the jury, in the hopes, perhaps, that they would disbelieve the defendant's witnesses. It would become a common course on all occasions of failure if this were to be tolerated, for a plaintiff, instead of choosing to be nonsuited, as he ought to have done in this case, for that is the only proper course, to try first what the jury will do for him, and if he should fail he will then apply to the court for a new trial. It is impossible to listen to such an application.'

" A stronger reason exists in this country for refusing a new trial in cases of surprise, because the practice has been adopted with us, and has long been settled, that in cases of surprise the court may, upon the plaintiff's application, direct a juror to be withdrawn, and order the cause to stand over for trial upon some future day (*The People* v. *The N. Y. Com. Pleas*, 8 Cow. 127; *United States* v. *Coolidge*, 2 Gallison, 364; *The People* v. *Ellis*, 15 Wend. 371; *The People* v. *Olcott*, 2 Johns. Cases, 301).

" It was held in *Willard* v. *Weatherbee* (1 New Hamp. Cases, 118), that when a party is surprised at the trial by evidence upon a particular point, it is a good cause for a motion to delay the trial, but where no such motion was made it is no ground for granting a new trial; and in *The People* v. *Marks* (10 How. Pr. R. 623), it was held that in cases of surprise, the plaintiff must apply to the court for leave to withdraw a juror, or else submit to a nonsuit, but that he cannot, after submitting his cause and finding the verdict against him, ask the court to relieve him on the ground of surprise. In *The People* v. *The N. Y. Com. Pleas* (*supra*), the surprise was the absence of a witness who had been duly subpoenaed, and who, it was expected, would be present at the trial. Judge Irving allowed a juror to be withdrawn, and the court, after a careful consideration of the question, decided that he had that power. This is one of the grounds of surprise in the present case; the absence of the witness Dana, who, it was expected, would be present.

" That the plaintiffs had no intention of examining Dana appears in the fact that they did not subpoena him. They were surprised by the testimony of Rutherford, who swore to a state of facts which, if true, established conclusively that Arthur di-

rected Freese to indorse his, Arthur's, name upon the check. If it then became of material importance to the plaintiffs to examine Dana as to what occurred, and if he could not be procured, the plaintiff should have asked the court for leave to withdraw a juror. This was their remedy, and their only remedy, but they did not deem it of sufficient importance to make such an application, preferring, probably, to take their chance of a verdict, in the hope that the jury would believe Arthur and disbelieve Rutherford and Freese. An early adjournment of the case was made after Rutherford's testimony, to enable the plaintiffs to procure Dana's testimony. They had until the opening of the court upon the next day to procure his attendance, but were unable to do so, and they neither applied to the court when they found they could not obtain him, for leave to withdraw a juror, nor even offered to read the testimony which Dana had given upon the former trial to the jury, showing that they could not then have attached a great deal of importance to the inconsistency between the respective statements of Dana and Rutherford, as they did not even offer to read Dana's testimony, having probably great confidence in the result before the jury, in which, as it has turned out, they were disappointed.

" They cannot now be relieved by having a new trial. The plaintiffs rely on the case of *Wehrkampf* v. *Willet* (1 Daly, 4), but that was a case in which the defendants discovered, *after the trial*, that the plaintiff, who was a witness for herself, swore to a fact, and a very material one, that she had money in a savings bank, with which she bought the property, and sufficient to have loaned her husband for the amount which he had borrowed, which was a material circumstance to strengthen her statement of her ability to purchase and pay for the property, and which was wholly false, it appearing by the testimony of an officer of the bank, that she had no money at all in it at the time. It was discovered, after the trial, that this statement was false, and the plaintiff had, in making it, been guilty of perjury. It is, therefore, very different from the present case, where the plaintiffs knew upon the trial the importance of Dana's evidence, if it were important, and had the remedy which the law

gave them, to ask that a juror be withdrawn; and *Wehrkampf* v. *Willet*, moreover, was the case of a defendant, who can neither submit to a nonsuit nor claim the right to have a juror withdrawn; whose only remedy was the one he sought, to have the verdict set aside upon discovering, after the trial, that a most material statement made by the plaintiff, as a witness on her own behalf, was false, and that she had committed perjury, a remedy which, in such a case, is always open to a defendant (*Marryat* v. *Wilson*, 1 Bos. 2), for it is all that he has. The motion for a new trial must, therefore, be denied."

From this order the plaintiffs appealed.

*D. T. Walden*, for appellants.

It is a general rule that all disingenuous attempts to stifle or suppress evidence, or to thwart the proceedings, or to obtain an unconscionable advantage to mislead the court or jury will be defeated by setting aside the verdict (Graham New Trial, p. 56, sec. 5). So if a witness is kept away by the contrivance or through the agency of the defendants or their representatives, or any trick or device is practiced to prevent the plaintiff obtaining the evidence, the court will for this cause set aside the verdict (1 Gr. on New Trial [Waterman ed.], 56, 57; 3 Ibid. 100, 8, 9, 13; *Cary* v. *King*, 5 Geo. R. 75; *Barrow* v. *Jackson*, 40 New Hamp. 365; *Craft* v. *Union Mutual Insurance Co.* 36 Ibid. 44, 56, 57).

*B. T. Kissam* and *B. F. Lee*, for respondents.

I. As to the alleged deafness of the juror. 1. It is a general rule, which has been long and well settled, that the affidavits of jurors will not be received to impeach their verdict (*Vaise* v. *Delavan*, 1 Term R. 11; *Owen* v. *Washburton*, 1 Bos. P. N. C. 226; *Smith* v. *Chatham*, 3 Car. 57; *Welling* v. *Swansey*, 3 Gill & Johns. 473; *Dana* v. *Tucker*, 4 Johns. 487; *People* v. *Columbia Co. Common Pleas*, 1 Wend. 297; *Robbins* v. *Wendover*, 2 Tyler, 11; *Clum* v. *Smith*, 5 Hill, 560).

II. As to the alleged surprise on the trial.  1. Admitting there was any surprise, it is a well settled rule of law that if the plaintiffs be surprised at the trial, they must withdraw a juror or submit to a nonsuit.  They cannot go to trial, take the chance of a verdict, and then, if disappointed in the result, be granted a new trial (*Harrison* v. *Harrison*, 9 Price R. 89 ; *People* v. *N. Y. Com. Pleas*, 8 Cow. 127 ; *U. S.* v. *Coolidge*, 2 Gallison, 364; *People* v. *Ellis*, 15 Wend. 371; *People* v. *Olcott*, 2 Johns. Cases, 301 ; *Willard* v. *Weatherbee*, 1 N. H. Cases, 118 ; *People* v. *Marks*, 10 How. Pr. R. 261 and 263, and cases cited ; 1 Graham & Waterman on New Trials, pp. 187–191 ; *Edwards* v. *Dignam*, 2 Dow. R. 642 ; *Turquand* v. *Dawson*, 5 Tyr. R. 488 ; *Carr* v. *Gale*, 1 Curtis C. C. 384 ; *Savoni* v. *Brashear*, 46 Mo. 345 ; *Beckford* v. *Chapman*, 44 Ga. 543 ; *McClure* v. *King*, 15 La. Ann. 220 ; *Live Yankee Co.* v. *Oregon Co.* 7 Cal. 40 ; *Beach* v. *Tooker*, 10 How. Pr. R. 297, 299).  2. But in point of fact the plaintiffs were not surprised at the trial.  A party cannot be entitled to relief where he has not used due diligence to procure evidence (*Fellows* v. *Emperor*, 13 Barb. 92, 104 ; *Peek* v. *Hiler*, 30 Barb. 655 ; 1 Graham & Wat. New Trials, 174, 187).

ROBINSON, J.—In November, 1867, one F. S. Freese, being the creditor of the New Jersey Stock Yard and Market Company, in the sum of $12,500, or $12,400, and of Joseph McPherson, its superintendent, individually in about $2,900, demanded payment of him, and accepted towards payment the joint note of said McPherson and William R. Arthur, the President of said Stock Yard and Market Company, for $15,000, payable to his order at thirty days.  He applied to plaintiff to discount it, who agreed to have it discounted at the bank, if changed to a note of like amount and date, payable to their order.  It was accordingly so changed for that purpose, and plaintiffs, in payment of such proceeds of its discount, and at their request, gave him their check, payable to the order of said W. R. Arthur, for $14,830, " balance, less discount and collection paid in cash."  Such collection fee being " something less than $100."  Mr. Arthur was not an accommodation maker, but united in the note, as he says, at McPherson's request, " to

save himself from paying $15,000 to another party. I (he) owed $15,000. I (he) was responsible for $15,000." * * * " The First National Bank of New Jersey." " That was the party to whom I (he) stood responsible " " for McPherson." Although the check for $14,830 was made payable by request of Freese to Arthur, the former, so far as appears, was the party equitably and wholly entitled to the money, and Arthur could only have acted as trustee for his benefit. The check was paid upon the ostensible indorsement of Arthur, the payee, made through Freese's assumed agency for that purpose. Mr. Arthur in no way disputed the payment of the $15,000 note, when it became due, on account of want of consideration, but after being advised of the circumstances under which the consideration was advanced, paid it with $6,000 cash, which he received from Mc-Pherson, and his own note for $9,000 in renewal for the balance, which he has paid in full. He thus recognized and admitted the validity of his obligation thereon, and responded to it.

The controversy, therefore, by these acknowledged and undisputed facts, is narrowed down to the mere question as to the efficacy of the indorsement of Mr. Arthur's name upon the check by Freese, its holder and beneficial owner, under any authority, express or implied, or by recognition and adoption. It appears from proof given without contradiction, that Arthur, during the course of all these transactions, in no way repudiated the original transaction occurring in form and legal effect immediately between himself and the plaintiffs, that he never questioned the validity of his note for want of consideration, but has repaid the plaintiffs in full the amount they had advanced by their check to his order (which alone constituted any such consideration), through indorsement thereon by such assumed acts of agency. The principal has asserted no rights as against the plaintiffs for money paid by mistake or misapprehension, nor is any suggestion made of any facts upon which he could found any such reclamation. Arthur had no actual interest in the money payable by the check drawn to his order. It was the proceeds of his own note given to Freese in payment of a subsisting debt, and the question of Freese's original authority to make the indorsement for him became entirely superseded by

his subsequent and unquestioned recognition and ratification of the act. A principal, when advised of the illegal acts of any one assuming to act therein as his agent, is bound to repudiate them, and any omission to do so within a reasonable time amounts to a ratification (*Law* v. *Cross*, 1 Black [U. S.] 539; Story on Agency [7th ed.] § 256 and notes). If Freese acted improperly in assuming to indorse the check as Arthur's agent, he is liable for any damages sustained by his assumed principal, but as between Arthur and the plaintiffs, it is evident that Arthur has fully recognized and adopted the means by which the full consideration of his note, made payable directly to plaintiff, and constituting the expression and measure of his obligation to them, was advanced and paid. No right of reclamation of the moneys he thus paid them is or can well be suggested, and it is evident that he, if any one, and not they, are the losers by any unlawful assumption of Freese to act as his agent.

So far as plaintiffs are concerned, it is evident they can have no interest in the present question, and are not entitled to recover from the defendants for money drawn on their check, which has been paid to the parties in interest, and for which they have been fully compensated by the person in whose behalf the money was so drawn from the bank, whether by his direct action, or through an assumed agency. While regarding these considerations, arising out of the case presented by plaintiffs as decisive of the merits of this controversy, and fully establishing defendant's exemption from responsibility for payment of plaintiff's check now brought in question, I deem the reasons assigned in the opinion of Chief Justice Daly upon the points presented on the motion for a new trial as completely answering the argument made on this appeal. He has precisely stated the law applicable to such a motion for a new trial, both upon the point raised as to the deafness of the juror, and as to the device and trick used by Rutherford to obstruct plaintiff in finding the witness Dana, even if those means had been shown—as it was not—to have been in any respect successful, or influencing Dana's conduct. Plaintiffs, if appreciating the materiality of his testimony, should have enforced his attendance on their

behalf by subpœna; and if unable to do so, should have applied to the court for a postponement of the trial or withdrawal of a juror, as they might and ought to have done, under the authorities cited in the opinion of Chief Justice Daly. They could not avail themselves of the chances of a verdict, with full understanding of the importance of the testimony in their favor, and after defeat allege their own remissness, although aggravated as to its consequences by the unfair conduct of some third person, as a ground for defeating the consequences of the verdict upon the testimony presented and submitted to the court and jury.

The order denying the motion for a new trial should be affirmed, with costs.

LARREMORE and JOSEPH F. DALY, JJ., concurred.

Order affirmed accordingly.