action, and that it was absolutely void; and, secondly, that they do not state that said order was made against the will or consent of the plaintiff; and, thirdly, that they do not assert that plaintiff ever made any effort to have said order vacated or modified.

While the question, perhaps, is not free from doubt, we think that the allegations are insufficient. More or less was said upon the argument to the effect that said order was really made upon the application and consent of plaintiff. This we cannot, of course, consider. But before the commencement of this action the defendant Belden was entitled to have his indebtedness determined in an ordinary action at law, wherein he could enjoy his constitutional right of a jury trial, unless such course was clearly impossible to plaintiff. The courts are not inclined to extend the cases in which a plaintiff will be excused from pursuing the ordinary course of obtaining a judgment upon his indebtedness, and we think that it will not be going too far to hold that a plaintiff seeking to make such an excuse as is urged in this case shall clearly allege and show that the restraining order has been made against his opposition and without his procurement or consent. Further than this, the restraining order was apparently of a preliminary and temporary character. We are unable to find any provision which authorized the district court to restrain an action at law pending in the state courts against the bankrupt personally to determine the amount of the indebtedness. If there was no such provision, the order was without jurisdiction and void, and it is fair to assume that, if the plaintiff herein had made an application to have the injunction vacated or modified, the court would have listened to his application. We think that it was his duty to allege and show that he had made a reasonable effort to get rid of what appears to be a somewhat extraordinary and unusual order. Bank v. Wetmore, 124 N. Y. 241, 251, 26 N. E. 548; Shellington v. Howland, 53 N. Y. 371, 375; Glass Co. v. Vary, 152 N. Y. 121, 127, 46 N. E. 312. The interlocutory judgment appealed from should be affirmed, with costs.

Interlocutory judgment affirmed, with costs. All concur.

---

(68 App. Div. 302.)

### DIXSON v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

NEW TRIAL—SURPRISE AS TO EVIDENCE.

A woman was injured in a railroad accident, and 12 days later was examined by the company's physician, complaining only of an injury to her shoulder and arm. At the trial of her action, over a year later, she proved the existence of a hernia, caused by the accident. She had discovered it immediately, but did not ask medical aid until it became so troublesome that she had to do so. Her complaint alleged "serious and lasting bodily injuries, and injuries to her head, limbs, and nervous system, as well as internal injuries." There was no application for an adjournment, or to withdraw a juror, no allegation of surprise, no motion to dismiss, no request for instructions on the question of damages, and no pretense that defendant, by reason of anything done or omitted, had been deprived of evidence. *Held* error to set aside a verdict in plaintiff's favor on the ground of surprise.

Woodward and Jenks, JJ., dissenting.

Appeal from trial term, Kings county.

Action by Maggie Dixson against the Brooklyn Heights Railroad Company. From an order setting aside a verdict for plaintiff and granting a new trial on the ground of surprise (71 N. Y. Supp. 969), plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

S. S. Whitehouse, for appellant.
I. R. Oeland, for respondent.

HIRSCHBERG, J. The order appealed from recites that it is granted "upon the ground of surprise," and the main question presented upon the appeal is whether the facts justify the exercise of the undoubted power of the court to grant a new trial upon that ground. The plaintiff, an unmarried woman 30 years of age, was injured while attempting to board one of the defendant's cars on the 25th day of October, 1899. Her verified complaint stated that in consequence of the accident she had sustained "serious and lasting bodily injuries, and injuries to her head, limbs, and nervous system, as well as internal injuries." This complaint was served more than a year prior to the trial. On the trial the serious injury disclosed was an inguinal hernia, which the plaintiff ascribed to the accident. She discovered it right after the accident, but did not know what it was, thought it would wear off, and was ashamed to ask for medical aid until it became so troublesome that she was compelled to do so. She applied liniments, poultices, and hot water in the meantime, but it continued to grow worse, and a few weeks before the trial, urged by her married sister's importunities, she went to the doctor and procured a truss. On the 6th day of November, 1899, 12 days after the accident, at the defendant's request, she voluntarily submitted herself to examination by a doctor acting in the interests of the company. At that time she complained only of her shoulder and arm, saying nothing of the incipient hernia, and of course the doctor made no examination of her person.

The fact of the existence of a large hernia at the time of the trial, and that it was more than a year old, was proven by the evidence of the doctor to whom she finally went for aid, but its connection with the accident necessarily depended, and must depend, upon her own evidence and the credit to be attached to it. This was true on the trial already had, and must be equally true on a new trial. The questions of the extent of pain and inconvenience which the hernia would occasion; the time when it would first manifest itself, and the different causes which would be likely to produce it, were gone into on both sides, and no claim is or has been made that additional cumulative evidence is available or desirable. On behalf of the defendant, the physician testified that the injury would develop "immediately; just as soon as the thing happens. It is accompanied by sudden severe pain, and direct attention immediately to something wrong there. The next symptom is a swelling at the location of some of the half-dozen weak spots in the abdominal

wall where hernia gets through,—where rupture comes through. Then, after a little pain and the inflammatory symptoms subside, you have a break usually, and then there is left a swelling, which in most cases appears when the patient is standing and disappears when the patient is lying, and these symptoms increase in size, and sometimes they remain stationary, according to the patient's work." He further testified in detail to the various causes of hernia, and that the plaintiff's occupation was a competent cause of the neurasthenia of which she was also suffering at the time of the trial, but he did not refute, or attempt to refute, the claim that the accident was a perfectly adequate cause for the existence of the hernia.

While it is undoubtedly true that the concealment of the hernia from her physician is a circumstance calculated to excite suspicion to some extent, it cannot be said that it is not satisfactorily accounted for by innate modesty and probable ignorance of the nature and gravity of the trouble. But no one can read the charge to the jury delivered by the learned trial justice without appreciating his success in impressing upon that body the extreme care with which they should scrutinize and weigh all the facts which might be regarded as adverse to the plaintiff's claim, all which were presented in detail in such a satisfactory manner that the defendant took no exceptions and made no request. The defendant can certainly have no fairer trial of the case than the one now under review.

It is also beyond dispute that the language of the complaint is broad enough to include the hernia, and to justify the admission of evidence of its existence as a basis of damages. Ehrgott v. Mayor, etc., 96 N. Y. 264, 48 Am. Rep. 622; Quirk v. Siegel-Cooper Co., 43 App. Div. 464, 60 N. Y. Supp. 228; Mullady v. Railroad Co., 65 App. Div. 549, 72 N. Y. Supp. 911. It may naturally be inferred that the defendant did not know at the time of the trial of the existence of the plaintiff's hernia, but the case contains no claim to that effect. There was no hint or suggestion made pointing to any doubt about the genuineness of the injury, or the propriety or desirability of opportunity to investigate or to combat either its existence or its origin. The defendant not only failed to make any motion for the disclosure of the particulars of the plaintiff's claim, but on the trial made no objection whatever to the proof of the hernia as a basis of damage. After the evidence was thus received without objection the defendant did indeed move to exclude the proof "on the ground that it is irrelevant and immaterial, and that is not an issue raised by the pleadings, and the pleadings are not sufficient to place the defendant on notice of it, and we had medical examination and no suggestion was made of it at that time." The court ruled that, the evidence having been received without objection, the motion to exclude it was too late, and, further, that the evidence was material and competent within the pleadings, to which ruling the defendant took an exception. The only other exception taken by the defendant upon the trial was upon a ruling that the court would submit to the jury the question whether the plaintiff's then physical condition was due to the accident. Neither rul-

ing was erroneous, nor is either urged upon the brief as cause of error. There was no application for an adjournment; no request to withdraw a juror; no allegation of surprise; no motion to dismiss, either at the close of the plaintiff's case or after the whole case; no request for instructions to the jury upon the question of damages or upon any other question; and no pretense that the defendant, by reason of anything done or omitted, had been deprived of evidence which it would otherwise have had, or which it expects or desires to present on a new trial. The defendant's motion for a new trial was not made upon the ground of surprise. It was made, as recited in the order, upon the grounds stated in section 999 of the Code of Civil Procedure. It was not granted upon any of those grounds, nor could it have been, for surprise is not among them, the exceptions are untenable, and it is not claimed that the verdict is excessive, or contrary to law or to the evidence.

It would appear from the opinion written by the learned trial justice and from the condition of the record that the suggestion of surprise came from the court, and the right to grant the order, without a request having been made by the defendant upon the trial for delay, is based upon the cases of Tyler v. Hoornbeck, 48 Barb. 197, and Bank v. Adams, 67 Barb. 318. They differ from this case in at least two important particulars: First, the order for a new trial in each of those cases was granted to enable the moving party to furnish additional evidence, which was expressly pointed out, and which was of a different character from that previously elicited; and, second, the failure to produce such evidence in the first instance was occasioned by the affirmative acts and declarations of the opposing litigant or counsel. In the Tyler Case a distinct understanding or agreement in relation to the conduct of the trial was made and violated, and, as stated by the court (page 198), the order furnished an opportunity "for the introduction of new testimony." In the Bank Case the defendant's attorney stated to the plaintiff's attorney that the answer was only put in to gain time, and on failure to negotiate a settlement he informed the plaintiff's representatives that they must take judgment in the case. Notwithstanding these misleading statements, the defendant successfully presented an affirmative defense, which the plaintiff's counsel could have met had he been prepared with his witnesses, and the order was granted to enable the plaintiff on a new trial to "throw light on the question" at issue (page 320), in respect to which it was "misled by the statements of the defendant's attorney into supposing no evidence on the point necessary." It was held in these cases that it was not necessary to ask for an adjournment or for the withdrawal of a juror as a preliminary to a motion for a new trial upon the ground of surprise. But the misleading of an opponent by an affirmative assertion or by violating an express agreement are instances of exception to the general rule which requires the surprise to be manifested in some way upon the trial, as was clearly pointed out in Rubenfeld v. Rabiner, 33 App. Div. 374, 378, 54 N. Y. Supp. 68, to which case attention will be directed later.

Assuming the plaintiff to have acted in good faith when she vol-

untarily submitted herself to the inspection of the defendant's doctor, and to have then honestly believed that the slight swelling in the groin would disappear, and assuming that the growth of the hernia was gradual, and that she did hesitate to be treated from motives of maidenly reserve and in the hope of ultimate recovery, all which is reasonably supported by the evidence in the case, medical and otherwise, it cannot be said that either she or her counsel owed to the defendant the duty of disclosing the fact of the existence of the hernia, and inviting occular confirmation. The allegations in her complaint were framed so comprehensively as to authorize proof of the injury, and as the court said in Ehrgott v. Mayor, etc., 96 N. Y. 277: "If the defendant desired that they should be more definite, it could have moved to have them made more specific, or for a bill of particulars." But if the plaintiff had seen fit to assume a burden so far beyond any heretofore placed upon a suitor in this class of litigation, and to have voluntarily informed the defendant that she had a hernia which she traced to the accident, it is not obvious how the course of the trial could or would have been affected, excepting that general expert evidence might have been offered by the defendant cumulatively to that which it did present. In Rubenfeld v. Rabiner, supra, the precise question was decided by the appellate division in the First department, and it was unanimously held that the plaintiff was not entitled to a new trial on the ground of surprise, although the circumstances bore a marked analogy to those herein considered, and although the motion was made upon the ground of surprise. The plaintiff in that case sued for damages for injuries alleged to have been occasioned by the defendants' horse and wagon used in their business, and in consequence of the negligence of the defendants' driver. The defendants in their answer admitted that they were the owners of the horse and wagon, and that they were used in their business, but denied all the allegations of the complaint with regard to the accident, the negligence of their driver, and the plaintiff's injuries. The defendants' business was that of bottling mineral water, and it was conducted at No. 119 Chrystie street, under the name of the Metropolis Bottling Company. The plaintiff proved on the trial that the wagon bore the name and address mentioned, but the defendants proved that the driver, Hirsch, was not in their employ, but was doing business upon his own account under an agreement with the defendants whereby they sold the mineral water to him, and furnished him with the horse and wagon for use in his business of selling the water upon his own account to his own customers. A verdict was directed for the defendants, and on the motion for a new trial the plaintiff proved that but for the misleading nature of the answer he could have overborne the defense by indubitable proof. The court said (page 377, 33 App. Div. and page 71, 54 N. Y. Supp.):

"If the plaintiff had brought himself within the rules which govern with regard to applications for new trials upon the ground of surprise, he showed enough to invoke a favorable exercise of discretion; that is, he showed that, if he had had any notice or intimation of the defense to which the defendants' testimony was addressed, he might have come into court prepared with evidence which would at least have required the submission of the

question of fact as to Hirsch's agency to the jury. That he was surprised by the testimony adduced by the defendants is quite probable. And that surprise was entirely natural. While the testimony given by the defendants may have been admissible under the pleadings, it was not testimony that a practitioner of ordinary prudence could have anticipated. The defendants had admitted in their answer the ownership of a horse and wagon as averred in the complaint. They had apparently denied only the negligence of their servant with regard to the driving of such horse and wagon. And yet, analytically considered, the denial doubtless covered the agency as well. Almost any one, however, even the most skilled in the profession, might have been deceived by the form and tenor of such an answer. There was no affirmative plea as to the arrangement with Hirsch,—nothing to call the plaintiff's attention to the defense really contemplated on that head. If the plaintiff's counsel upon the offer of the defendants' evidence,. or after it was put in, had made known his predicament to the learned judge, doubtless he would,-have been relieved. An adjournment might have been granted, or leave given to withdraw a juror. But nothing of the kind was requested. There was no suggestion of surprise. The counsel relied upon his affirmative proof, and seemingly took his chances upon the ruling of the court. The rule is well settled that a plaintiff who is surprised by evidence which he is not prepared to rebut should move for an adjournment or for leave to withdraw a juror; otherwise, he is not entitled to a new trial on the ground of surprise. Baylies, New Trials & App. 531, and cases there cited; Messenger v. Bank, 6 Daly, 190; Soule v. Oosterhoudt, 20 Wkly. Dig. 67; Glendening v. Canary, 5 Daly, 489, affirmed in 64 N. Y. 636. It is true that this rule is not inflexible, as where reliance is placed upon statements made by the defendant's counsel before the trial. Unfortunately for the plaintiff, however, nothing whatever is here shown to justify a departure from the general rule. It is true that the plaintiff's attorney was informed by one of the defendants prior to the trial that their defense would be that the injuries sustained by the plaintiff were caused by the act of a furniture van and the child's own negligence. No statement, however, was made upon the subject of their relations with Hirsch, nor did they avowedly limit their defenses to those disclosed. The plaintiff's counsel was certainly not prevented by any statement of the defendants from at least proclaiming his surprise upon the trial, if, in fact, he was then surprised."

The case at bar was carefully tried before a judge of wide experience and recognized ability. The defendant was deprived of no legal right. It made no objection to the submission of the controversy to the jury upon such evidence as it had, and the verdict rendered is by no means large enough to suggest prejudice or sympathy. It is true, as stated by the learned trial justice, that "upon a new trial, if the claim of the plaintiff is right, she can maintain successfully her demand for damages to their full extent"; but, in the absence of any good legal ground for such a course, she should not be compelled to endure the exposure of a second trial, with its incidental expenses and annoyance. The order should be reversed, and judgment directed upon the verdict.

Order reversed, with costs, and judgment directed upon the verdict, with costs. All concur, except WOODWARD and JENKS, JJ., who dissent.