CASTLE v. GREENWICH FIRE INS. CO.

(City Court of New York, Trial Term. March 6, 1897.)

1. TRIAL—VERDICT—AFFIDAVITS OF JURORS TO IMPEACH.
The affidavits of jurors are not admissible to impeach their verdict by showing mistakes or misconduct on their part.

2. SAME—WHAT CONSTITUTES MISCONDUCT.
Failure of the jurors to consider a matter to which their attention was called is misconduct, and therefore cannot be shown by their affidavits for the purpose of impeaching the verdict.

Action by Ignazio Castle against the Greenwich Fire Insurance Company. There was a verdict in favor of plaintiff, and defendant moves for a new trial. Denied.

Hays & Greenbaum (Daniel P. Hays, of counsel), for plaintiff.
Cardoza & Nathan (Edgar J. Nathan, of counsel), for defendant.

O'DWYER, J. The motion to set aside the verdict and for a new trial, upon the grounds specified in section 999, Code Civ. Proc., is denied. There was a conflict of evidence, properly submitted to the jury for their determination, and the evidence is such that I cannot say that the verdict is against the weight of evidence.

The motion to set aside the verdict as arising from mistake of the jury presents a different and more serious question. On the trial the plaintiff claimed a total loss of $3,486.20, with two policies of insurance covering the property, one by the defendant of $2,500, the other by the State Union Association Fire Lloyds of $2,000,—aggregation, $4,500 of insurance,—and claimed as the proportion by the

defendant $1,936.78, with interest from January 8, 1895. The policy issued by the defendant provided that:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall be to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property."

A verdict for $1,662.50, with interest from October 13, 1894, representing only five-ninths of the plaintiff's loss, would make the market value of the property at the time of the fire $2,991.60, nearly $500 less than the value claimed by the plaintiff. The court charged the jury that the burden was on the plaintiff to show that he had the stock on hand, and that it was of the value claimed, but that they were to find, from all the evidence, the value of the property destroyed by the fire, and that the defendant's liability in any event was only for its proportion of the loss, or, in other words, for five-ninths of the loss caused by the fire. The jury was also charged that, if the plaintiff willfully misrepresented the amount of loss, then, under the conditions of the policy, he could not recover any sum whatever. After being so charged the jury retired, and returned with a verdict for the plaintiff for $1,662.50 and interest, which interest was then and there computed, and the verdict recorded for $1,895.18.

It is now claimed that, after the jury had agreed to find a verdict for the plaintiff, there was some argument as to the amount of loss, and finally it was agreed to allow the plaintiff for the lemons at $1.75 per box; that the jury, in rendering their verdict, entirely overlooked the other policy held by the plaintiff, which, under the provisions of the policy in suit, should contribute to the loss and bear the proportion of four-ninths of any amount the jury might award; that by the verdict the jury found the total value of the stock destroyed to be $1,662.50, of which amount the defendant was liable for but five-ninths, with interest from January 8, 1895. And in support of this contention the defendant presents affidavits, substantially alike in form, from seven of the jurors, that:

"In rendering a verdict in favor of the plaintiff for $1,662.50 and interest, the jury finally agreed to allow the plaintiff the price of $1.75 per box for 950 boxes of lemons, and said verdict was for the value of all this stock. (The fact that the Lloyds insurance policy for $2,000, held by the plaintiff on the same property, should contribute four-ninths of the loss, was overlooked.)"

Another juror says "the jury did not consider at all the fact that other insurance existed upon the same property," and another juror says "that the portion of the affidavit in parentheses was not considered by the jury." The rest of the affidavits of these jurors is the same as that of the seven described.

I am now compelled to determine whether I can consider the affidavits of the jurors submitted upon this application, and am referred by the learned counsel for the defendant to the case of Sargent v. ————————, 5 Cow. 106, as an authority directly in point in support of receiving and considering the affidavits of the jurors. I have with great care examined that case, and after due deliberation have concluded that there can be found no authority in the able opinion of Judge Sutherland that would justify the consideration of the

jurors' affidavits in the case at bar.   In the Sargent Case affidavits of the jury were received to show that they were misled, and adopted a principle in estimating damages not allowed by law.   That action was to recover for loss of services by reason of the seduction of plaintiff's daughter, and, in addition to allowing damages for the lost services and the actual expenses incurred by the plaintiff that were recoverable in that action, the jury gave the plaintiff $900 as the expense of bringing up the child.   As stated in the opinion:

"The jurors supposed it was proper to give enough to bring up and educate the child, as the plaintiff's counsel, in addressing the jury, expressly claimed a right to recover on that principle, which was not denied by the judge in his charge; nor did he notice or comment on it at all.   It then stands admitted, not that one or two jurors estimated the damages on that principle, but that it was an error common to all the jury, resulting from what they considered the implied assent of the judge to the correctness of the rule of damages as claimed by the counsel for the plaintiff.   This is, in effect, equivalent to a misdirection of the judge."

The rule governing the reception of affidavits is well stated by the learned judge, later on in the opinion, when he says:

"They are not introduced to show any impropriety in the conduct of the jurors, or that the verdict is not such as they intended, but to show a misconception of the rule of damages, as derived from the charge of the judge, taken in connection with the argument of counsel.   It was natural for the jury to infer, from the silence of the judge upon this point, * * * his assent to the correctness of the rule of damages as laid down by counsel.   They acted upon that supposition.   Their error was one into which they were led by the court. It was in the nature of a misdirection.   The fact that they were so misled can be derived from no other source than the jurors themselves.   If the judge had expressed the opinion which the jurors understood him to entertain, the verdict would have been set aside for a misdirection.   I repeat that the affidavits impute no impropriety of conduct to the jurors, nor do they contradict the verdict as recorded."

The facts here fall far short of those in the case at bar.   The jury were properly instructed upon the liability of the defendant in case they should find the plaintiff was entitled to recover.   The counsel for the plaintiff, in summing up, referred to the fact that the plaintiff could only recover about $1,900 from the defendant out of a loss of over $3,400.   The failure of the jury, after their attention had been called to the proportionate liability of defendant, to consider the effect of the other policy of insurance upon the total loss, amounted to misconduct on their part.

After the decision in the Sargent Case, the question of receiving affidavits of jurors was again before Judge Sutherland in Ex parte Caykendoll, 6 Cow. 53, and the learned judge then said:

"It is certainly well settled that the affidavits of jurors cannot be received to show a mistake in making up their verdict.   And we never intended to detract from that rule in Sargent's Case.   In that case the counsel advanced an erroneous rule of damages to the jury, which was not corrected in the charge of the judge.   The jury were in this way led to adopt the rule.   We considered these circumstances equivalent to a positive misdirection of the judge, and allowed the affidavits of jurors to be read showing that they were in fact misled.   It was impossible to make out what in truth operated as a misdirection of the judge in any other way.   Misdirection is a very usual ground for granting a new trial, and the case cited establishes merely that a set of circumstan-

ces may amount to the same thing. Further we did not mean to go, and we expressly disclaim the idea of trenching on any of the cases which had refused to hear the affidavits of jurors."

The case of People v. Columbia Common Pleas, 1 Wend. 297, is in point, and against the contention of the defendant. Chief Judge Savage there said:

"The rule in England is that the courts will not suffer the jury to explain by affidavit the ground of their verdict, or to show that they intended something different from what they found. This rule is expressly recognized in Sargent's Case. In Jackson v. Williamson, 2 Term R. 281, the whole jury united in an affidavit that they intended to find a verdict of £61, and supposed that by finding £30 the prothonotary would of course add £31, and thus make up the sum of £61, yet the court refused to act upon the affidavit, saying that it would be productive of infinite mischief and it was better that the plaintiff in that cause should suffer an inconvenience than that such a rule should be introduced."

See, also, Clum v. Smith, 5 Hill, 560; Dalrymple v. Williams, 63 N. Y. 361, and Moses v. Railroad Co. (Com Pl.) 23 N. Y. Supp. 23.

The clear weight of authority sustains the doctrine that the evidence of jurors is incompetent to impeach or impair their verdict by showing their mistakes or misconduct. It follows that I must refuse to consider or receive the affidavits of the jurors presented on this motion, and, nothing remaining to show that the verdict is not correct, the motion that the same should be set aside unless reduced must be denied, and the stay granted in the order to show cause vacated, with $10 costs.