(25 App. Div. 275.)

## MOULTON et al. v. ÆTNA FIRE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. PARTNERSHIP—WHAT CONSTITUTES.

M. & W., without written articles of co-partnership, made a verbal con-
tract that M. should put in $2,000 and a warehouse, and W. should put in
$4,500, for the purpose of trading in tobacco; that they should share losses
and gains equally, and hire an agent to represent them. They engaged in
business as agreed. *Held*, that they were partners, and all the property
used in the business was partnership property.

2. INSURANCE—CHANGE OF OWNERSHIP.

A chattel mortgage on partnership property, given by one partner to an-
other to secure advances to the firm, does not operate as a violation of a
clause in an insurance policy on the firm property, providing, "If any change
take place in the interest, title or possession of the subject of insurance,
or if the subject of insurance be personal property, and be or become en-
cumbered by chattel mortgage," the policy shall be void.

Appeal from judgment on report of referee.

Action by Mary J. Moulton and William W. Wright against the
Ætna Fire Insurance Company. From a judgment for plaintiffs,
defendant appeals. Affirmed.

On the 16th day of February, 1893, the defendant issued its policy of in-
surance, in consideration of $37.50, to the plaintiffs, insuring them for the term
of one year from the 16th of February, 1893, against all direct loss or damage
by fire in the amount of $2,500, on property described in the policy as follows,
to wit: "$2,500. On leaf tobacco packed or in process of packing and in bulk,
and on cases holding the same, their own or held in trust, or on commission,
or sold but not removed, while contained in assured's two-story frame, tin-roof
tobacco warehouse, situate on west side of street in village of Cicero." On
the 14th of February, 1894, for a valuable consideration, the defendant, by
an instrument in writing, renewed said policy, and continued it in force and
effect for one year from the 16th day of February, 1894. On the 1st day of
November, 1894, a fire occurred, by which the property so insured "was damaged
and wholly destroyed by said fire to the amount and extent of $15,000 and
upwards." The referee found: "That at all the times in said complaint men-
tioned the plaintiffs were and now are co-partners, carrying on their co-part-
nership business of buying, packing, storing, sorting, casing, and selling leaf
tobacco at the village of Cicero." Immediately after the fire, notice was given
to the defendant thereof, and within 60 days after the fire proofs of loss were
made out and delivered to the defendant, and more than 60 days before the
commencement of this action; and upon the trial it was stipulated that due
notice of the fire and proper proofs of loss were received by the defendant.
The policy contained the following language: "This entire policy, unless other-
wise provided by agreement indorsed hereon or added thereto, shall be void
* * * if the subject of insurance be personal property, and be or become in-
cumbered by a chattel mortgage." The answer alleges that the personal prop-
erty so insured "became, contrary to the aforesaid condition against chattel
mortgages, incumbered by certain chattel mortgages, namely, one dated on or
about March 5, 1894, and a second one dated on or about June 18, 1894, both
being duly filed in the office of the town clerk of the town of Cicero, N. Y.,
which mortgages were executed and delivered by said Mary J. Moulton, one
of the plaintiffs, and sole owner of said property, to W. W. Wright, one of the
plaintiffs herein, for the respective sums of $7,521.32 and $7,573, and that the
property described in aforesaid chattel mortgages was, and was intended by
said parties to be, the same property alleged to have been covered by and in-
cluded in the policy upon which this action is brought." In the proofs of loss
the property destroyed was stated to be 171,733 pounds of tobacco, and the
value was named at $21,311.94. The referee found the value of the property
damaged and destroyed to be $15,000. The referee found that prior to or at

the time the written instruments were executed known as chattel mortgages, "said Wright loaned or advanced to said co-partnership, in addition to the sums paid by him into the business of the same by the terms of the co-partnership agreement, certain sums of money; and said written instruments were so executed and delivered to, and received and retained in the custody of, said Wright, with the intent and purpose of the parties thereto that said instruments should show and represent the amount of said loans or advances, and should also secure, so far as they legally might, the repayment to said Wright of the sums so loaned or advanced out of the property and assets of said co-partnership." The referee also found, viz.: "That after said fire, and before the plaintiffs rendered said statement or proofs of loss as aforesaid, and after the defendant had full knowledge of the making out, delivery, and filing of the two chattel mortgages set out in its answer in this action, the defendant duly requested the plaintiffs to make out and render to it, the defendant, said statement or proofs of loss; and also then and there requested the plaintiffs to comply with the terms of the policy upon which this action is brought. That thereafter, and in compliance with said request, the plaintiffs made out and rendered to the defendant said statement or proofs of loss as hereinbefore set out. And the plaintiffs, by said request of the defendant, and their compliance therewith, were then and there subjected to the trouble, inconvenience, and expense of making out and rendering to the defendant said statement or proofs of loss. That the said request of the defendant, after it had knowledge of the execution, delivery, and filing of the two chattel mortgages set out in said answer, to wit, that the plaintiffs make out and render to it, the defendant, said statement or proofs of loss, as hereinbefore set out, and the compliance of the plaintiffs therewith, as aforesaid, was a waiver by the defendant of any and all defenses, if any it had, that the policy upon which this action is brought had become null or void by reason of the making, delivery, and filing of the two chattel mortgages set out in said answer, and then and there fully reinstated and made valid said policy, if a recovery thereon had theretofore been forfeited by the execution, delivery, and filing of the two chattel mortgages set out in said answer." The referee also found: "The defendant requested the plaintiffs to submit to an examination under oath by virtue of the terms and conditions of the policy upon which this action is brought, and that in compliance with such request the plaintiffs did, on the said 19th day of February, 1895, at the city of Syracuse, N. Y., submit to such an examination under oath, which was then and there conducted by the defendant, or its duly-authorized agent or attorney; and that such an examination was reduced in writing, and the plaintiffs, by said request of defendant, and their compliance therewith, were then and there subjected to the trouble, inconvenience, and expense of such examination." The referee found as a conclusion of law that the chattel mortgages executed by the plaintiff Mary J. Moulton to W. W. Wright, March 5, 1894, and June 18, 1894, "did not operate, and neither of them operated, in law, as a transfer of the property described therein to a third person, or stranger, but solely as an increase of the interest of one partner to the firm's assets as between themselves; that said instruments, executed and delivered by one partner to the other partner, and received and retained by him, did not operate, in law, as a chattel mortgage of said property, or any interest therein, within the scope and legal intendment of the provisions in the policy of insurance, in respect to chattel mortgages."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Newell B. Woodworth, for appellant.

I. N. Ames, for respondents.

HARDIN, P. J. The evidence before the referee sustains the finding of fact made by him that the plaintiffs were co-partners. That co-partnership was formed in the fall of 1890. There were no written articles of co-partnership, but a verbal agreement was made. Mary J. Moulton was to put in $2,000 and the use of her warehouse,

and W. W. Wright was to put in $4,500 in cash, and Frank Moulton was to be employed as agent of the firm, and he was to receive $50 per month for his services, and the plaintiffs were to share alike in the profits and losses. After such an arrangement was made, the plaintiffs commenced buying and selling tobacco, with the aid of the services of Frank Moulton, son of Mary. We think the evidence warrants the conclusion reached by the referee that at the time the policies were issued and renewed all the property covered by the policies and renewals was the property of the co-partnership, and that the contention of the appellant that the evidence indicates that the property belonged to Mary J. Moulton individually ought not to be sustained.

2. It is contended in behalf of the appellant that the chattel mortgages issued by the female plaintiff to the male plaintiff rendered the policies void, and the learned counsel for the appellant calls our attention to the clause in the policy as follows: "If the interest of the insured in the property be not truly stated herein, or if any change take place in the interest, title, or possession of the subject of insurance, or, if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage," the policies are avoided; and he calls our attention to the case of Woodward v. Insurance Co., 32 Hun, 365. That case differs from the one before us, as in that case, when the policies were issued, the property was subject to a chattel mortgage given to one Vandewalker, and it was said in the course of the opinion that:

"The effect of a chattel mortgage is to convey the title of the property to the mortgagee, and thereafter the mortgagor's interest is that of an equity of redemption, and nothing more. * * * Therefore the interest of the assured in the personal property was not that of a sole, entire, and unconditional ownership, and so much of the contract as related to that class of property was void by the very terms of the condition."

In the case in hand it will be observed that at the time the policies were issued and renewed the property belonged to the co-partnership, and the chattel mortgages were executed several months subsequent to the issuing of the policies, to wit, one on the 5th of March and the other on the 18th of June, 1894.

Appellant's learned counsel calls our attention to Gray v. Assurance Co., 82 Hun, 380, 31 N. Y. Supp. 237. That case differs from the one in hand, as the policy there was issued on the 18th of June, 1892, to Davis Bros., who "executed a chattel mortgage on the property insured to one Henrietta Briggs," a third party, in no way connected with the firm of Davis Bros. In the case in hand the mortgages were executed by Mary J. Moulton to W. W. Wright, and, so far as they were expressed to be mortgages of the entire property held by the firm, they were inoperative, as she only had an undivided interest in the property. Besides, a transfer from one partner to another of supposed interest in partnership property has been considered not to be a violation of the provisions of a policy inhibiting the change of title or interest of the assured. Such transfer simply transfers the interest the partner may have in any surplus remaining after payment of the firm debts and the settle-

ment of firm accounts.   Menagh v. Whitwell, 52 N. Y. 146;  Wood v. Insurance Co., 149 N. Y. 385, 44 N. E. 80.

In the case of Dresser v. Insurance Co., 45 Hun, 299, the policy contained a provision, viz.: "This policy shall become void and of no effect * * * by the sale or transfer, or any change in title or possession, of the property insured."  The policy was issued to Dresser & Co., and the firm was dissolved subsequently, and the interest of Callanen in the firm property was transferred to Dresser, and Dresser executed a chattel mortgage on the property for $2,000 to Callanen, to secure such purchase price; and it was held "that the dissolution of the partnership, the transfer of Callanen's interest in the property to Dresser, and the giving of the chattel mortgage by Dresser did not work such a transfer of interest as to avoid the policy."  That case was affirmed.   122 N. Y. 642, 25 N. E. 956. By the use of the language we have quoted evidently it was the object of the company to guard against "controversies with strangers, or persons other than those with whom they contracted." Dey v. Insurance Co., 23 Barb. 627.

In Wilson v. Insurance Co., 16 Barb. 511, it was held, viz.:

"Where an insurance is effected upon goods belonging to a co-partnership, a transfer of interest in the partnership property and in the policy of insurance from one partner to the other will not prevent a recovery in case of loss, notwithstanding a clause in the policy declaring that the interest of the assured therein is not assignable without the written consent of the insurers.   An assignment from one partner to another is not within the principle on which the prohibition is founded."

In the course of the opinion delivered in that case it was said:

"When underwriting for a firm, the insurers are presumed to know, and to be satisfied with, each and every of its members. * * * They therefore agree, in effect,—for such is the legal inference,—that a transfer of interest from one partner to the other is within the original understanding, and that it shall form no objection, in case of loss, to the right of recovery.   It is an assent, necessarily implied from the nature of the contract, and given in advance, and therefore requiring no subsequent notice."

In Germania Fire Ins. Co. v. Home Ins. Co., 144 N. Y. 199, 39 N. E. 78, it was said:

"This right of the insurance company was in no wise invaded when this court held that a sale by one partner to another of his interest, where both were insured, did not avoid the policy.   It is only when a stranger is to be brought into contractual relations with the insurance company that the consent of the latter is essential."

It seems reasonable to construe the language used in the defendant's policy as intended to prevent ownership or interest in the insured property by any third person, rather than to limit the respective rights of the members of a firm to which the policy was issued.

In Darrow v. Society, 116 N. Y. 537, 22 N. E. 1093, it was held that:

"For the purpose of upholding a contract of insurance, its provisions will be strictly construed as against the insurer.   When its terms permit more than one construction, that will be adopted which supports its validity.   It is only when no other is permissible by the language used that a construction which works a forfeiture will be given to it."

In Baley v. Insurance Co., 80 N. Y. 23, it was said:

"When a clause in a contract is capable of two constructions, one of which will support and the other defeat the principal obligation, the former will be preferred. Forfeitures are not favored, and the party claiming a forfeiture will not be permitted, upon equivocal and doubtful clauses or words contained in his own contract, to deprive the other party of the benefit of the right or indemnity for which he contracted."

In commenting upon Hoffman v. Insurance Co., 32 N. Y. 405, where the policy provided that, if the property insured be sold or conveyed, the policy should be void, and the court held that this provision was not intended to forbid changes of interest among the partners themselves, but related exclusively to assignments and alienations to third persons, in Keeney v. Insurance Co., 71 N. Y. 402, Andrews, J., said:

"The court regarded the condition against alienation as intended to protect the company against liability in case of a transfer of the insured property to strangers to the contract. The company by issuing the policy had shown its willingness to insure all the persons composing the firm, and the suggestion that they might have been unwilling to insure two of them without the other was considered fanciful and unsound."

The foregoing views lead to an affirmance. Judgment affirmed, with costs. All concur.