GEORGE A. STROMBLAD and FIRST MORTGAGE BOND CORPORATION OF AMERICA, Pla ntiffs, *v.* HANOVER FIRE INSURANCE COMPANY, Defendant.

Supreme Court, Onondaga Trial Term, August, 1923.

Insurance — automobiles — conditional sale — when policy issued to purchaser and his assignee of contract of sale several and not joint — bill of sale under seal by purchaser to wife — right of assignee of purchaser to recover insurance — evidence — credibility of witnesses — affidavits of jurors not competent to impeach verdict — Civ. Prac. Act, § 549.

An automobile having been bought under a contract of conditional sale, one other than the buyer financed the purchase and took an assignment of the contract. A policy issued by defendant insuring both the purchaser and the assignee of the contract " as their respective interests may appear " against direct loss or damage by fire, etc., in the amount of the purchase price, contained a provision making the policy null and void in case of the transfer or termination of any interest of the assured, other than by death, or any change in the nature of their insurable interest, either by sale or otherwise. An absolute bill of sale of the car from the purchaser to his wife was filed in the county clerk's office but no consent of the insurance company was obtained for such transfer and none was indorsed upon the policy of insurance. In an action brought by the purchaser and his assignee of the contract to recover on the policy the amount of their loss by the destruction of the car by fire, the said bill of sale, which was under seal, was received in evidence. *Held,* that the defendant made out a *prima facie* defense.

The evidence given to overcome the presumption of consideration imported from the seal, was that of the purchaser of the car who testified that he executed the bill of sale for the purpose of making it appear that he owned no property so that he could better force a settlement at an advantageous figure of the claim of a creditor who was pressing for payment, and of his wife and the attorney who drew the bill of sale and caused the seal to be placed thereon. *Held,* that the question of the credibility of the testimony of all of said witnesses was for the jury.

Under a charge that the presence of the seal on a bill of sale was only presumptive evidence of a consideration, the question whether the purchaser of the car transferred his interest therein to his wife was submitted to the jury and their answer was in the affirmative.

A motion under section 549 of the Civil Practice Act for a new trial upon the judge's minutes can only be made upon the grounds therein stated, of which misapprehension upon the part of the jury of a question submitted to them is not one.

Upon a motion made under section 549 of the Civil Practice Act to set aside a special verdict of the jury as to the question answered adversely to plaintiffs, the affidavit of five jurors that they intended to find that the bill of sale was in reality a device designed to give an outward appearance different from the facts which actually existed are neither necessary nor proper, and cannot be considered; the proper practice is to move at Special Term to set aside the verdict upon affidavits which should be served upon the defendant so that it may have opportunity to answer them.

The rule that the affidavits of jurors are not competent to impeach their verdict rests upon considerations of public policy.

The contract of insurance was several and not joint, and the execution and delivery of the bill of sale of the car without the knowledge or consent of the assignee of the contract of purchase did not work a forfeiture of the assignee's rights under the policy.

Motions by the respective parties to set aside the verdict as to questions decided adversely to the movant and for a new trial, denied.

The motion of the assignee of the contract for the purchase of the car for the direction of a verdict in its favor granted, and a judgment in its favor for the amount of its interest in the car granted with interest from the date of its destruction, besides costs.

Defendant's motion for the direction of a verdict in its favor denied as against the assignee of the contract of purchase, and granted as to the purchaser, and judgment directed in favor of defendant for the dismissal of the complaint upon the merits as to the purchaser of the car, with costs.

MOTION by respective parties for direction of verdict and to set aside special verdict of the jury.

*Harley J. Crane,* for plaintiff George A. Stromblad.

*Ray B. Smith,* for plaintiff First Mortgage Bond Corporation of America.

*Charles E. Spencer,* for defendant. ·

EDGCOMB, J.    George A. Stromblad bought a Marmon coupe in May, 1921, upon a conditional sale contract.    The First Mortgage Bond Corporation of America, the other plaintiff, financed the purchase, and took an assignment of the contract.    On May 9, 1921, the defendant issued a policy insuring both plaintiffs, " as their respective interests may appear," against direct loss or damage from fire, theft, robbery and pilferage, in the sum of $5,582, the purchase price of the car.    While said policy was in force, and on the 6th day of October, 1921, the car was destroyed by fire.    This action is brought by both of the assured to recover the amount of their loss.

At the close of the evidence defendant moved for a direction of verdict against both plaintiffs, and the First Mortgage Bond Corporation of America moved for a direction of verdict in its favor for the amount of its interest in said coupe.    Decision of these motions was reserved, pursuant to the provisions of section 459 of the Civil Practice Act, and pending decision five questions of fact raised by the pleadings were submitted to the jury.    Three were answered adversely to the defendant, and one in its favor.    The other pertained only to damages.    Pursuant to section 549 of the Civil Practice Act, each party moved to set aside the verdict as to the questions answered adversely to the movant.    So far as this discussion is concerned it can be limited to the right of the plaintiffs

to recover, in view of the verdict upon the question answered adversely to them.

Printed in large type on the policy is a provision that it was made and accepted subject to the provisions, exclusions, conditions and warranties therein set forth. Among the exclusions we find a provision making the policy null and void in case of transfer or termination of any interest of the assured, other than by death, or any change in the nature of their insurable interest, either by sale or otherwise. On July 15, 1921, George A. Stromblad executed a bill of sale conveying the automobile in question, together with other property, to his wife. That instrument was filed in the clerk's office of Onondaga county the following day. No consent of the company was obtained for this conveyance, and none was indorsed upon the policy.

Stromblad seeks to explain and avoid the effect of this bill of sale by saying that there was no consideration for it; that there was no change of possession; that at best it was a mere colorable or nominal transfer and that the paper was sham and spurious. He insists that it did not transfer title to his wife, and that it is without any legal force or effect. He testified that a creditor was pressing him for the payment of a bill, which he deemed exorbitant, and, rather than go into court and try out the case on its merits, he executed this bill of sale for the purpose of making it appear that he owned no property, so that he could better force a settlement at an advantageous figure.

The jury were asked to say whether or not Mr. Stromblad transferred his interest in this car to his wife. They answered that he did. If that question was properly submitted to the jury, and their finding is allowed to stand, defendant is entitled to judgment against Stromblad, if not against both plaintiffs. It is well settled that insurance is a personal contract. The obligation of the insurer does not run with the property. An insurance company has the right to choose those with whom it will do business. *Lett* v. *Guardian Fire Ins. Co.*, 125 N. Y. 82; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 385. The exclusion in question is a plain, simple, unambiguous provision, and full effect must be given to the language used. The condition was a proper one. A violation thereof, and a transfer of interest will vitiate the policy. *Walton* v. *Agricultural Ins. Co.*, 116 N. Y. 317.

Plaintiffs urge that this question relative to this transfer is one of law rather than of fact, and that it never should have been sent to the jury. I cannot agree with this contention. When the bill of sale was received in evidence defendant made out a *prima facie* defense. The instrument is absolute on its face. The presence

of the seal imports the existence of a consideration. *Vulcan Iron Works* v. *Pittsburg-Eastern Co.*, 144 App. Div. 827; *Howie* v. *Kasnowitz*, 83 id. 295; *Rothschild* v. *Frank*, 14 id. 399. At common law the seal was conclusive evidence of consideration. *Gray* v. *Barton*, 55 N. Y. 68, 71. While this rule has to some extent been modified by statute (Civ. Prac. Act, § 342), it has not been changed as to executed instruments. *Baird* v. *Baird*, 81 Hun, 300; affd., 145 N. Y. 659; *Williams* v. *Whittell*, 69 App. Div. 340, 346; *Hull* v. *Hull*, 172 id. 287, 291. In *Baird* v. *Baird, supra,* it is said " Formerly, a seal upon an instrument imported consideration, and such presumption could not be rebutted, so as to invalidate the instrument; and such is still its effect upon executed instruments, such as a deed of real estate; but upon executory contracts its effect has been changed by statute, so that a seal is only presumptive evidence of a sufficient consideration which may be rebutted in the same manner as if the instrument had not been sealed."

This bill of sale is an executed agreement. Nothing remains to be done by either party. Neither vendor nor vendee bound himself to do anything in the future. Under the above authorities it might well be held that the consideration of this instrument could not be attacked, and that title to the car did, therefore, actually pass to Mrs. Stromblad. However, plaintiffs were given the benefit of the doubt, and the jury was charged that the presence of the seal was only presumptive evidence of a consideration. For the purposes of this motion we must accept that as the law of the case.

Did plaintiffs' evidence overcome this presumption? All the evidence to the contrary was given by Stromblad, his wife, and his attorney. Stromblad and his spouse are interested witnesses. Their credibility is for the jury. *Ferris* v. *Sterling*, 214 N. Y. 249; *Ten Eyck* v. *Whitbeck*, 156 id. 341; *Gulliver* v. *Blauvelt*, 14 App. Div. 523; *Rosenstein* v. *Traders' Ins. Co.*, 102 id. 147, 149; *Cunningham* v. *Castle*, 127 id. 580; *Bogorad* v. *Dix*, 176 id. 774. Neither do I think that it can be held as a matter of law that the presumption of consideration is overcome by the evidence of the attorney who drew the bill of sale. He must be held to have known the legal import of the seal upon the instrument which he drew. He was acting for Stromblad and his wife. The jury might well have said that this whole transaction was an effort on the part of Mr. Stromblad to defraud his creditors, and that the attorney, who so far forgot his obligations and lent himself to a scheme of this kind, was unworthy of belief, and that his testimony was not sufficient to overcome the presumption which

the law raised by the presence of the seal which the attorney himself caused to be put there. The credibility of his testimony was for the jury. This criticism is not directed to the attorney who tried this case for Mr. Stromblad. He had nothing to do with this bill of sale.

The case of *Forward* v. *Continental Ins. Co.*, 142 N. Y. 382, relied upon by the plaintiffs, is not decisive of plaintiffs' right to recover. That case went up on appeal from a verdict of a jury in favor of the plaintiff. Here the verdict is in favor of the defendant. There was ample evidence in the *Forward* case from which the jury could say that the company's agent knew of the existence of the bill of sale there under consideration when he wrote the policy, and that there was a waiver on the part of the company. In fact that was one of the questions submitted to the jury. Hence the statement in the majority opinion relative to the legal effect of the bill of sale was not necessary to the decision of that case. The opinion of the late General Term (*Forward* v. *Continental Ins. Co.*, 66 Hun, 546) assumes that the question of fact so far as the valid existence of the bill of sale is concerned was found adversely to the defendant; it says: " Under proper evidence laid before them, the jury found that this bill of sale, though executed and filed, did not have any valid existence, even as between the parties thereto." An examination of the record in the *Forward* case discloses the fact that there was no seal on the bill of sale, so that the presumption which exists here was lacking there. The facts surrounding the execution of the two cases are entirely different. In the *Forward* case the brother, who was the vendee, was ignorant of the existence of the instrument for upwards of five weeks after its execution and filing; he lived some distance from the vendor, and never went to the store to take possession of or see the property. Here the vendee was present and took part in the talk which resulted in the execution of the document in question; she consented, and inferentially, at least, requested that the instrument be executed and placed on file. She used and drove the car for her own convenience. In commenting on the situation revealed by the evidence here I borrow the language of Judge Hiscock in *Rosenstein* v. *Traders' Ins. Co.*, 79 App. Div. 481, 487: " We certainly do not feel that there is any such lack of merit in the defendant's defense in this case as should lead us to put a strained and unnatural construction upon the clause in order to relieve the insured from the difficulties created by him." Plaintiffs also take the stand that the verdict should be set aside because the jury did not understand the question submitted to them, and answered it in a manner other than they contemplated. Plaintiffs present and ask

to have considered upon this motion the affidavits of five jurymen, who say in substance that they intended to find that this bill of sale was in reality a device designed to give an outward appearance different from the facts which actually existed. These affidavits cannot be considered here for two reasons: *First.* This is a motion under section 549 of the Civil Practice Act, and can only be made upon the grounds therein stated. Affidavits are not necessary or proper in such a motion. A misapprehension on the part of the jury of the questions submitted to them is not a ground specified in that section. If it is desired to set aside a verdict for any such reason a motion for such relief should be made at Special Term upon affidavits, which should be served upon the opposing party so that he may have an opportunity to answer them. *Second.* Affidavits of jurors are not competent to impeach their verdict. The decisions where this principle has been applied are very numerous in this state as well as in every state in the Union, and in England. That is so whether the purpose be to show the deliberations or votes of the jury, or to disclose generally the principles, grounds or evidence upon which they based their verdict, or whether they considered or failed to consider certain evidence, or whether it be to reveal the manner in which they arrived at their verdict, or whether they misunderstood or disregarded the instructions of the court, or whether it be to prove bias, prejudice or misconduct on the part of the jury. I cite but a few of these many authorities. *Williams* v. *Montgomery,* 60 N. Y. 648; *Dalrymple* v. *Williams,* 63 id. 361; *People* v. *Sprague,* 217 id. 373; *Dean* v. *Mayor,* 29 App. Div. 350; *Haight* v. *City of Elmira,* 42 id. 393; *People* v. *Gallagher,* 75 id. 39; *Perry* v. *New York Central & H. R. R. R. Co.,* 169 id. 83; *Clum* v. *Smith,* 5 Hill, 560; *Ex parte Caykendoll,* 6 Cow. 53; *People* v. *Columbia Common Pleas,* 1 Wend. 297; *Castle* v. *Greenwich Fire Ins. Co.,* 45 N. Y. Supp. 901; *Taylor* v. *Everett,* 2 How. Pr. 23; *Messenger* v. *Fourth National Bank of City of New York,* 6 Daly, 190; *Paige* v. *Chedsey,* 1 Misc. Rep. 396; *Moses* v. *Central Park, etc., R. R. Co.,* 3 id. 322; *Perkins* v. *Brainard Quarry Co.,* 11 id. 328; *Broadway Building Co.* v. *Saladino,* 81 id. 73; *Curry* v. *Quait,* 100 id. 604; *Bridgewater* v. *Plymouth,* 97 Mass. 382; *Holman* v. *Riddle,* 8 Ohio St. 384; *Handy* v. *Providence Mutual Fire Ins. Co.,* 1 R. I. 400; *Haight* v. *Turner,* 21 Conn. 593; *Smith* v. *Eames,* 4 Ill. 76; *Christ* v. *City of Webster City,* 105 Iowa, 119; *Baker & Sons* v. *Sherman,* 71 Vt. 439.

It is said in the *Handy Case, supra:* " The proper time to ascertain whether or not the jury have mistaken the meaning of the charge, is immediately after the verdict is returned, while the jury may be polled. It would be exceedingly dangerous to grant

Supreme Court, August, 1923.                    [Vol. 121

new trials, upon the testimony of jurors, as to their understanding of the charge, given several days after the verdict, and when their recollections of the case have become more or less indistinct."

This rule rests upon the consideration of public policy. Every trial lawyer knows full well that it is an easy matter to find several jurors out of every twelve, who have rendered a verdict adverse to his client, who, if he talks to them and inquires how they reached such a verdict, will hide behind an excuse that they misapprehended the charge, or the evidence. If such a statement, put in the form of an affidavit, should be held sufficient ground to warrant a new trial, few, if any, verdicts would ever stand, and there would be no end to litigation. Such a rule would open a door to deals between an unscrupulous attorney and juror, and consequent perjury which it would be well nigh impossible to detect. Public policy demands the enforcement of the rule which has been so universally adopted. It was said by Lord Ellenborough in *Rex* v. *Wooller*, 2 Stark. 111: " The danger would be infinite if an affidavit could be received from a juryman for the purpose of setting aside a verdict."

*Kennedy* v. *Ball & Wood Co.*, 91 Hun, 197, is not in conflict with this rule. In that case there was a general as well as special verdict. The two were inconsistent, and under those circumstances it was held that the rule prohibiting the use of a juror's affidavit to impeach his verdict did not apply.

It is always presumed that the jury will follow the instructions of the court. The attention of the jury in this case was specifically called to the contention of the plaintiff regarding this bill of sale. It would seem that there was no occasion for any juryman of ordinary intelligence becoming confused as to the meaning of the question submitted. The jury had been out several hours when they asked for instructions upon another phase of the case. They were told that the court was anxious to give them any possible aid and that they were at liberty to ask any question upon any subject which was troubling them. No suggestion was made that they did not clearly understand the matters they had under consideration. Counsel made no suggestion that the charge did not clearly define the issues. It would never do to set aside the verdict on any such affidavits as are presented here. There must be an end to litigation.

There is still left for consideration the question of whether Stromblad's act binds the First Mortgage Bond Corporation, and affects its rights. The policy in question is not the standard form fixed by statute, and in general use. It is a short form, known as an automobile policy, and which has been used by many of the

companies in risks of this nature during the past few years, since they have been insuring automobiles bought on conditional bills of sale, as the majority of motor vehicles used nowadays are purchased. Both plaintiffs are named as the assured. While their respective interest in the property is not specified, yet after their names appear the words " as their respective interests may appear." This expression implies uncertainty, both as to the extent and the character of the share of the parties named. The use of the phrase authorizes the insured, in case of loss, to show what his part in the property actually was, and the policy has the same effect as if the facts as to the interest subsequently shown had been inserted in the contract. *Dakin* v. *Liverpool, London & Globe Ins. Co.,* 77 N. Y. 600. If this policy had been issued to Mr. Stromblad as owner and a standard mortgagee clause, making any loss payable to the First Mortgage Bond Corporation of America, as its interest might appear, had been attached, there would be no question but what the company could recover the amount of its interest in this car, because that clause provides that the interest of the mortgagee shall not be invalidated by any act or neglect of the mortgagor or owner. Such a provision, however, is wanting in this policy.

The question here is whether one of the two parties named as the assured can, by an act done in violation of the terms of the policy, and without the knowledge or consent of the other assured, invalidate the policy as to his coassured. Under such circumstances is the act of one attributable to the other, so as to affect the latter's rights under the policy? This question becomes important because of the growth of insurance of this character, and the increasing use of these short form policies. Cases involving the construction of the standard mortgagee clause are of no value here. Because of the long use of that clause, we find but few cases which throw direct light upon this question.

Certain fundamental and well-established principles involving the construction of insurance policies must be borne in mind. The law does not look with favor upon a forfeiture, and one will not be permitted unless a strict construction of the policy requires it. The language of the policy, being that of the insurer, is strictly construed against the company, and if there is any ambiguity the insurer is entitled to the benefit of the doubt. *Dilleber* v. *Home Life Ins. Co.,* 69 N. Y. 256; *Dwight* v. *Germania Life Ins. Co.,* 103 id. 341; *Griffey* v. *New York Cent. Ins. Co.,* 100 id. 417; *Cooper* v. *United States Mut. Accident Assn.,* 57 Hun, 407; affd., 132 N. Y. 334; *Moulton* v. *Ætna Fire Ins. Co.,* 25 App. Div. 275; *Primeau* v. *National Life Assn.,* 77 Hun, 418.

Concededly the First Mortgage Bond Corporation has an insurable interest in this coupe, separate and distinct from that of Stromblad. That company relied upon the automobile as security for the payment of Stromblad's indebtedness, and was interested in seeing that the property was protected for that purpose. *Harvey v. Cherry,* 76 N. Y. 436; *Rohrbach v. Germania Fire Ins. Co.,* 62 id. 47; *Kent v. Ætna Ins. Co.,* 84 App. Div. 428; *Traders Ins. Co. v. Robert,* 9 Wend. 405.

The liability of the insurance company to the plaintiffs under this form of policy is several and not joint. *Kent v. Ætna Ins. Co., supra; Sullivan v. Spring Garden Ins. Co.,* 34 App. Div. 128; *Hathaway v. Orient Ins. Co.,* 134 N. Y. 409.

In the *Kent Case, supra,* a policy was issued to two persons "as interest may appear." One was the owner, and the other held a chattel mortgage upon part of the chattels. The action was brought by the mortgagee to recover his loss occasioned by the destruction of the property by fire. The owner was not joined as a party. Held, that the policy created a several and not a joint liability. The court says: "The insurance company contends that these parties were insured jointly and that its liability to them is joint and not several. In other words, it claims that the construction of the policy is the same as if the plaintiff and the Perfecta Packing Case Company had been named as the insured and the clause 'as interest may appear' had been omitted. We fail to see how the words last quoted are to be given any force and effect unless they be construed as creating a several liability. * * * It is unreasonable to suppose that after examining the property, as it ·presumably did, and accepting the premium, the insurance company intended by this clause to require the insured to prove ownership. It dealt with them upon the assumption that between them they held the complete title, but not jointly, and it contracted to pay them according to their respective interests, which, of course, they were required to show." It seems to me that this language is not only applicable but controlling here.

In *Sullivan v. Spring Garden Ins. Co., supra,* a policy was issued to two parties, "as interest may appear." One was the owner of the property, and the other was a contractor, engaged in constructing a building thereon. Held, that the form of the policy created several contracts, one with each insured, upon which either might sue without joining the other.

The contract here under consideration being several and not joint, a prohibited act done or permitted by one party without the knowledge or consent of the other will not work a forfeiture as to the other; it is not a joint act of both parties.

The First Mortgage Bond Corporation did nothing which could be held to invalidate this policy. It took no part in and had no knowledge of this transfer from Stromblad to his wife. The insurance company knew when it issued the policy that Stromblad was to have possession of and control over the car, at least until he made default in payment. It would seem to be a harsh rule which, under such circumstances, would work a forfeiture of the mortgagee's rights under the policy, and one which is contrary to the well-established law regarding insurance.

The motions made by the respective parties to set aside the verdict as to the questions decided adversely to the movant and for a new trial of such issues are denied. The motion of the plaintiff First Mortgage Bond Corporation of America for a direction of a verdict in its behalf is granted, and judgment in its favor is directed for the sum of $2,480.89 and interest from October 6, 1921, with costs. The motion of the defendant for a direction of a verdict in its favor is denied as against the plaintiff First Mortgage Bond Corporation of America, and granted as to the plaintiff George A. Stromblad, and judgment directed in favor of the defendant dismissing the complaint as to Stromblad upon the merits, with costs.

Ordered accordingly.