THOMAS SPADARO, Plaintiff, *v.* THE CHENANGO COUNTY NATIONAL BANK AND TRUST COMPANY OF NORWICH, NEW YORK, and Another, Defendants.

Supreme Court, Chenango County, July 16, 1935.

*Edwin F. Verreau,* for the plaintiff.

*Lee, Levene & McAvoy* [*David Levene* and *Donald Whitney* of counsel], for the defendant bank.

*Frank W. Barnes,* for the defendant John Distefano.

PERSONIUS, J. The plaintiff sues to compel the defendants to satisfy a bond and mortgage and to have the same declared canceled. The bond and mortgage in the sum of $14,800 were given February 24, 1931, by the plaintiff under the name of Gaetano Spadaro to the defendant John Distefano. He assigned them to The Chenango County National Bank and Trust Company of Norwich, New York, hereinafter called the " bank,"·as collateral security to the assignor's indebtedness to the bank. The plaintiff carried insurance in the sum of $15,000, $14,000 of which was payable, first, to the bank and second, to Distefano, as their interests might appear, the remaining $1,000 being payable to the bank only. The buildings were completely destroyed by fire March 24, 1932. The insurance companies refused to pay. The plaintiff, Mr. Spadaro, sued the various companies, making the bank and Mr. Distefano parties defendant. These actions are hereinafter called the " insurance actions." The insurance companies defended alleging that the fire was caused by the plaintiff, that the building fell prior to the fire, and that the damage to the building was caused solely by explosion. The insurance actions were tried together. The first trial resulted in a disagreement. Upon the second trial, the plaintiff, Mr. Spadaro, withdrew any claim to damages and the claims of the bank and Mr. Distefano alone were litigated, except that in order to determine whether the insurance companies were entitled to subrogation against Mr. Spadaro, the issue as to whether he caused the fire was litigated and by special verdict determined in his favor. The bank obtained judgments for its claim totaling $10,048.95. A motion to set aside the verdict was denied. The judgments were paid, the bank agreeing to repay $450 pursuant to a compromise arrangement.

Parenthetically, the defendant Mr. Distefano had judgments for the difference between the total amount due on the mortgage and the amount due the bank amounting to $3,534.27. This also was paid.

In other words, the total amount owing on the mortgage to the mortgagee, Mr. Distefano, and to the bank under its collateral assignment thereof has been paid by the insurance companies except the $450 allowed by the bank. Mr. Distefano is willing to satisfy the mortgage and consents to judgment without costs. The bank refuses to do so, alleging that it incurred expense for legal services and disbursements, necessary to enable it to collect the insurance, in the sum of $1,500 and $452.62, respectively, which sums it has paid. It further alleges that the plaintiff is not entitled to credit for the $450 which it allowed in order to obtain payment of its judgments without appeal. That the amount paid by the bank for legal services and disbursements was reasonable is conceded. Mr. Spadaro and Mr. Distefano had attorneys in the insurance actions. They knew that Lee, Levene & McAvoy were appearing for the bank and actively participating in the conduct of the litigation. They did not expressly offer to furnish an attorney for the bank, nor did they agree to pay the bank's attorneys. The bank never expressly asked them to furnish an attorney to look after its interest. Each party seems to have retained an attorney, without reference to the other, to look after his and its interest.

The plaintiff, Mr. Spadaro, agreed that he would " keep the buildings on the said premises insured against loss by fire for the benefit of the mortgagee." Subdivision 4 of section 254 of the Real Property Law provides that such clause in a mortgage " must be construed as meaning that the mortgagor * * * will * * * keep the buildings * * * insured * * * and will assign and deliver the policy or policies * * * to the mortgagee, his executors * * * or assigns, so and in such manner and form that he and they shall * * * *have and hold the said policy or policies as a collateral and further security for the payment of said money.*" (Italics ours.) Therefore, at the inception of the mortgage, Mr. Distefano, the mortgagee, held not only the mortgage but the insurance policies as *collateral* to the debt. The assignment to the bank carried with it all the security. The bank, to the extent of its claim against Mr. Distefano, the mortgagee, at least, became the holder not only of the mortgage but also of the insurance policies as *collateral*. At the time of the fire the bank was in the same position as the original mortgagee in respect to the collateral. It had the right to reduce the proceeds of the policies to possession, at least to the amount of its debt against the original mortgagee, Mr. Distefano.

Where legal or other expense is necessary in order to realize on collateral, has the pledgee the right to deduct such expense from the proceeds of the collateral before applying the same to the

secured debt? The authorities seem to hold that it has. (*Stern & Co., Inc.*, v. *Pizitz*, 240 App. Div. 509; *Field* v. *Sibley*, 74 id. 81; affd., 174 N. Y. 514; *Jackson* v. *American Cigar Box Co.*, 141 App. Div. 195; *Jackson* v. *Erkins*, 131 id. 801; *Bank of Staten Island* v. *Silvie*, 89 id. 465; *Bank of Picher* v. *Harris*, 100 Okla. 256; 229 Pac. 137; 2 Jones Mort. p. 946, § 1453.)

In *Stern & Co., Inc.*, v. *Pizitz* (*supra*) the court said (at p. 510): " The pledgee of collateral commercial paper holds the same in trust to enforce it according to its tenor, collect the proceeds and hold the same for the purposes of application upon the principal indebtedness and may apply such proceeds to the extent that such indebtedness is unpaid. *In addition, the expenses of collecting the collateral may be also withheld.*" (Italics ours.) In *Field* v. *Sibley* (74 App. Div. 81; affd., 174 N. Y. 514) the court said (at p. 83): " A pledgee has the right to sue for and to collect the collateral security * * *. As the pledgee was entitled to charge the expenses of the collection against the pledgor * * * it cannot be said that his agreement that the bonds might be charged with a proportionate share of the expenses of collection * * * was beyond his implied powers." In *Jackson* v. *American, etc., Co.* (*supra*) the court said (at p. 197): " Of course, where the pledgee has incurred expenses in doing either what he is under a duty or has a right to do with respect to the pledge, he is entitled to be reimbursed, and the mere payment of the face amount of the principal debt, with interest, does not of itself release the collateral or discharge the principal indebtedness. The debt is not fully paid and discharged except upon the payment of the amount of the principal, together with interest and all expenses for which the creditor is entitled to reimbursement. The mere acceptance of the principal sum and interest would only discharge the debt *pro tanto* * * *.*" In *Jackson* v. *Erkins* (*supra*) certain leases were assigned to secure a debt. Expense was incurred by the assignee in enforcing the leases. The assignee gave her attorney a lien for his services. It was held that the attorney " may assert his lien as against the debtor, although subsequently the debt was paid and the creditor gave a receipt in full." (Headnote.) At page 803 the court said: " Ordinarily, of course, the payment of an indebtedness releases the collateral, but here there was, if not a duty at least, a right to act under the assignment of the leases, and there was an implied obligation on the part of the assignor to reimburse the plaintiff for the expenses necessarily incurred by her in bringing proceedings or actions under the assignment of the leases. Therefore, as we view it, the defendant Erkins was not at the time the motion was made entitled to a return of the securities and the motion should have been denied."

The plaintiff relies largely on *Traders' Insurance Co.* v. *Robert* (9 Wend. 474). There the mortgagor had taken other insurance without notifying the insurer. There was a question as to his right to recover. An action was brought in his name but for the benefit of the mortgagee and a judgment obtained. (*Traders' Insurance Co.* v. *Robert*, 9 Wend. 404.) In the meantime the mortgagor had paid the mortgage. The insurance company obtained an order restraining the enforcement of the judgment. This was reversed. (*Robert* v. *Traders' Insurance Co.*, 17 Wend. 631.) In the lower court the mortgagee for whose benefit the judgment was obtained claimed his costs in the action and counsel fees. The court held he was entitled to the costs, but said: " Counsel fees * * * seem to be an equitable charge, but I much doubt the propriety of allowing them." They were disallowed. The higher court expressed no opinion on this issue. There the mortgagee was attempting to collect counsel fees of the insurance company. The question of the right of the mortgagee-pledgee to recover of the mortgagor-pledgor the expense of enforcing and realizing on the collateral was not·involved or discussed. The holding reported in 9 Wendell, 404, is cited with approval in part in *Smith* v. *Northern Insurance Co. of New York* (232 App. Div. 354, 357) and in *Stromblad* v. *Hanover Fire Insurance Co.* (121 Misc. 322, 330). Neither of these cases makes any reference to the court's comment in 9 Wendell, 474. In *Prinz* v. *Citizens' Insurance Co.* (80 App. Div. 638) the insurance company denied liability but paid the mortgagee, taking an assignment of the mortgage and paid the insured $200 additional. It then attempted to foreclose. The question involved was whether both payments were intended as a settlement of its obligation under the policy. The court said: " We are of the opinion that the proposition of the defendant to settle plaintiff's claim clearly indicated an intention on its part to include in the settlement the value of the mortgage. * * * We think * * * that the defendant * * * was offering the amount then due on the mortgage together with something in addition thereto." Under those circumstances, of course, the mortgage was paid.

The plaintiff cites many cases on propositions which are not urged by the defendant. The defendant is not seeking to recover costs or an additional allowance, nor is it seeking payment of counsel fees out of any fund recovered in a judgment creditor's or other action, or out of a trust fund. It is not seeking to recover on the theory that the plaintiff *expressly* contracted to pay the legal expenses or contribute thereto, but on an implied obligation or liability. As urged by the plaintiff, a mortgagee must apply the

insurance collected to the mortgage debt. The question here is whether he may first deduct the expense of collecting it.

The question here was not adjudicated in the insurance actions. The insured, the mortgagee and the assignee were proper parties to those actions. However, the bank's claim for reimbursement for the expense of enforcing its collateral was not mentioned in the pleadings or involved in the issues. The bank made no claim therefor in its answer and served no cross answer on the plaintiff. The amount of its claim was unknown. The only issue raised and litigated in the insurance actions was as to the liability of insurers. The issue in this action was neither raised nor adjudicated. (*Marine Transit Corp.* v. *Switzerland G. Ins. Co.*, 263 N. Y. 139.)

The bank was made a defendant in the insurance actions brought by the plaintiff here. It was necessary that it assert and prove its interest. It did so in its answer and upon both trials. It may be said that the plaintiff was represented by counsel by whom the bank's interest would have been protected. We cannot enter into a discussion or comparison of the relative merits of counsel. (*Stuart* v. *Hoffman & Co.*, 108 Va. 307; 61 S. E. 757, 759.) The bank having been made a party to the action was within its rights when it employed its own counsel to represent it and protect its interests. Indeed, at the second trial, Mr. Spadaro, the plaintiff-mortgagor, withdrew any claim to the proceeds of the insurance. He was there interested only in the determination of the special question as to whether he " intentionally " destroyed the property.

We are of the opinion that the defendant bank was entitled to deduct the reasonable expense incurred by it in enforcing its collateral, the insurance policies, and that the plaintiff is impliedly obligated to pay the same. If Mr. Distefano had not assigned but had enforced the policies, he would have been entitled to the same reimbursement. Perhaps he is notwithstanding his partial assignment of the bond and mortgage. This question is not here.

As to the $450 which the defendant bank allowed in compromise, or speaking more exactly, agreed to repay in order to obtain settlement of its judgments and avoid an appeal, we do not hesitate to say that such compromise was made in good faith and was reasonable. There were serious questions as to the liability of the insurance companies. The first trial resulted in a disagreement. The amount allowed in compromise was comparatively insignificant. The compromise avoided the possible loss of many times the amount allowed. Has the bank the right to charge the allowance to the plaintiff. It is substantially so held in *Tome Institute* v. *Whitcomb* (160 Fed. 835) and *Bank of Picher* v. *Harris* (100 Okla. 256; 229 P. 137). It is true that in each of those cases the mortgagor failed to co-operate

in the collection of the insurance. However, neither the right of the pledgee to reimbursement for expense incurred in enforcing the pledge nor for a reasonable allowance made in good faith in compromise of the pledge, seems to depend upon the consent of the pledgee. An analogous rule in New York is that a pledgee may not be held for the face value of the collateral pledged but only for the fair value of the pledge. (*Griggs* v. *Day*, 136 N. Y. 152, 162; *Vose* v. *Florida R. R. Co.*, 50 id. 369; *Barber* v. *Hathaway*, 47 App. Div. 165; *Thomas* v. *Zahka*, 228 N. Y. 187.) In the latter case the pledgee (defendant) was held for the full value but the court said (at p. 192): "The plaintiff in bringing this action had a right to rely upon this presumption (that the collateral was worth face value). The defendants should have met it by some proof as to the *actual value of the bond which of course, would limit or bar a recovery.*" (Italics ours.)

The insurance policies and the claims thereunder which the bank held as collateral to the plaintiff's bond merged in the judgment. The bank held it as collateral. It was under a duty to realize all that it possibly could, acting with reason and in good faith. This it did. It has not profited by the transaction. The defendant bank was only required to credit the plaintiff on his bond and mortgage with the amount which it had received from the insurance companies less the expense of collecting the same and the $450 allowed in compromise. Until he has paid the balance of his claim, the plaintiff is not entitled to a satisfaction of his mortgage.

Complaint should be dismissed, with costs.